*185 ORDER DENYING MOTION FOR RECUSAL OR DISQUALIFICATION OF JUDGE
KATHARINE ENGLISH, Chief Judge.
A. BACKGROUND; INTRODUCTION
This case is before the Court on a Motion that Plaintiffs have styled a “Motion for Recusal or Disqualification of Judge.” As explained below, the Court denies the motion.[1]
This case involves defamation and other claims brought by a former manager and an employee of Nanitch Sahallie, a specialized treatment and counseling center, that was affiliated with the Tribe. The Defendant’s also were employees of Nanitch Sa-hallie
Plaintiffs’ present Motion is based on allegations that, during part of the time when this case has been pending before the Court, the Chief Judge of this Court— the judge hearing the case—was in the process of entering into a new contract for the provision of judicial services to the Tribe and was seeking a raise in the hourly rate of pay under the contract, a raise that the Council granted. The Chief Judge of this Court, like all other judicial officers hired by the Council, is hired on a contract basis, rather than being elected by the Tribal membership or appointed for life or for some set number of years, as is the model in state and federal courts.
In their Motion, Plaintiffs contend that the Chief Judge should not hear this case because of an “actual or apparent conflict of interest or direct interest regarding de *186 cisions in; this case which may be adverse to the Tribal Council in regard to the increased pay and contract extension matters raised in the Pearsall matter with regard to Judge English acting in this case.” Plaintiffs also cite the judge’s supposed “bias or prejudice in favor of the Tribal Council^]” (Motion to recuse 2). In the Motion filed in Pearsall, on which Plaintiffs rely, the Petitioner claimed that the Chief Judge should not have heard that case because of a “direct interest” in the outcome of the litigation, Tribal Code § 310(c)(5)(A), because of bias and prejudice against or in favor of a party, under Tribal Code § 310(e)(5)(B), or, assuming the federal judicial code might apply, because the judge’s impartiality might reasonably be questioned.[2]
The Defendant’s have filed an opposition to Plaintiffs’ Motion for Recusal or Disqualification of Judge, opposing the Motion because “it does not allege any facts demonstrating bias or partiality on the part of the Chief Judge in this case” and because the Motion “is not timely.” (Defendants’ response 1). Defendants note that:
Plaintiffs’ affidavits make two assertions. First, the Chief Judge requested a new contract from the Tribal Council. * * * Second, the Chief Judge ruled in favor of Tribal Council in an unrelated case while her contract request was pending. Plaintiffs do not allege any nexus between those two events. They do not allege that the Chief Judge ruled in favor of the Tribal Council because her contract request was pending. Instead, Plaintiffs’ affidavits simply assert that they are “deeply concerned” about the two events.
(Defendants’ Response 2) (emphasis in original; footnotes omitted). Defendants also observe that “[Plaintiffs’ concerns are directed at the Chief Judge’s conduct in a case wholly unrelated to this” one. (Response 3). Defendants assert that “the Chief Judge has no ‘direct interest’ in this case. Defendants are former employees of the Tribe. They have no relationship of any kind with the Chief Judge.” (Response 3). Thus, Defendants conclude, “[Plaintiffs have offered no evidence of ‘bias’ or ‘prejudice’ on the part of the Chief Judge with regard to either Plaintiffs or Defendants in this case that would deprive Plaintiffs of a fair trial.” (Response 3).
Defendants also claim that Plaintiffs’ Motion was not timely filed. They note that since 1989 the Tribal Code has authorized a contract between the Tribe and its Chief Judge. Thus, Defendants reason, the source of Plaintiffs’ claim of bias should have been evident to Plaintiffs long before they filed their present motion.[3]
Plaintiffs have filed a reply contending that the Court cannot fairly hear the ease “given the economic interests and the other factors previously briefed,” the “futility” of pursuing this Motion after the Court’s rejection of the Motion filed in Pearsall, and the claimed lack of any legal necessity for the Chief Judge to hear the case. (Plaintiffs’ Reply Memorandum 1-2).[4]
*187 As indicated at the outset, the Court denies Plaintiffs’ Motion. Setting aside any questions about the timeliness of the Motion and the fact that it is even less persuasive here than was the Motion denied in Pearsall, the Court concludes that the Motion lacks merit and sweeps far too broadly.[5] This Tribal government has decided to hire, rather than elect or appoint its judges. Any judge hearing a case in this Court, or in the Tribe’s Appellate Court, will be hired by the Council and paid to hear the case. If this Court and this Judge cannot hear this ease, then no judge hired by the Council can. The Rule of Necessity thus allows the Court to hear the case, even assuming that there would otherwise be a conflict—a premise which the Court does not grant, but merely assumes for the sake of discussion. Plaintiffs’ premise—that a judge hired by the Council cannot hear any case involving the Council or the Tribe—if accepted, would hamstring the Tribal Courts, and their contention amounts to a not particularly indirect attack on the Council’s chosen method for obtaining and retaining judges, viz., by contract.
B. DISCUSSION
The Court has doubts about the timeliness of Plaintiffs’ Motion. As Defendants suggest, the ground-level basis for Plaintiffs’ Motion—the contractual relationship between the Chief Judge and the Tribe-should or could have been apparent to Plaintiffs long ago. Although Plaintiffs might respond that they did not know until recently that the Council was in the process of renewing the Chief Judge’s contract, they easily could have known of the expiration date of the Judge’s contract, which expired on February 1, 2003, and they knew or should have known that the Council contracts with the Chief Judge, and with other judges it retains, for the provision of judicial services.
But, despite the Court’s doubt about the timeliness of Plaintiffs’ present Motion, the Court will consider and decide this Motion on its merits. In somewhat hyperbolic terms, Plaintiffs’ Motion, in incorporating *188 the Motion filed in Pearsall, attacks and questions the “integrity” of the Tribal Court, and a response to that accusation is warranted.
As noted, Plaintiffs contend that the fact that the Chief Tribal Court Judge heard another case, while the Council was deciding whether to renew the Judge’s contract and to grant a raise in the hourly rate of pay, created an “actual or apparent conflict of interest or direct interest regarding decisions in this case,” or establishes the Judge’s bias and prejudice, or otherwise engenders doubt about the Judge’s fairness and impartiality.
The first two accusations can be easily cast aside. Nothing submitted by Plaintiffs and nothing otherwise apparent to the Court demonstrates that the Chief Judge has any direct interest in the outcome of this litigation. See Atkins v. United States, 214 Ct.Cl. 186, 556 F.2d 1028, 1035 (Ct.Cl.1977) (judges of court have no “direct” interest because they have “no direct financial interest in these cases, since none of the judges is a party or owns any legal or equitable interest, however small, in the claims the Plaintiffs are asserting, nor in any party to the proceeding”) (emphasis in original). And Plaintiffs have not produced any facts sufficient to show that the Chief Judge has any bias or prejudice that would affect the outcome of this proceeding, particularly given the yawning gap between any claim of bias in favor of the Tribal Council and this case.
But even if some “direct” interest in the outcome were apparent, if any bias or prejudice had been shown, or if the Judge’s fairness and impartiality might otherwise be called into question in this case, the rule of necessity would compel the Court to hear it. “Even in cases where the decisionmaker has a financial stake in the outcome, the Supreme Court has recognized that the Rule of Necessity not only allows, but at times requires, ‘judges to hear and decide cases within their jurisdiction.’ ” Malone v. City of Poway, 746 F.2d 1375, 1376 (9th Cir.1984). “The rule, simply stated, means that a judge is not disqualified to try a case because of * * * personal interest in the matter at issue if there is no other judge” who would not also be disqualified on the same basis. Malone, 746 F.2d at 1376. See also United States v. Will, 449 U.S. 200, 213-14, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980) (holding that rule of necessity allowed both district court and Supreme Court judges to hear case despite the judges’ direct interest in the rate of pay they were to receive); Evans v. Gore, 253 U.S. 245, 247-48, 40 S.Ct. 550, 64 L.Ed. 887 (1920) (rule allowed Supreme Court to hear case involving taxation of compensation of federal judges); Atkins, 214 Ct.Cl. 186, 556 F.2d 1028 (court required to hear judges’ case regarding the amount of their compensation despite statutory and ethical provisions that otherwise would have mandated disqualification).
The rule recognizes that, where necessary, it is far preferable to provide a judicial forum whose impartiality might be questioned, than to provide no forum at all where all judges who might serve also could face the same or similar complaints. Will, 449 U.S. at 217, 101 S.Ct. 471 (“Far from promoting [a fair forum in which litigants can pursue their claims], failure to apply the Rule of Necessity would have a contrary effect, for without the Rule, some litigants would be denied their right to a forum”).
This proceeding, and Plaintiffs’ accusations, fall squarely within the rule. The (to some extent unstated) thesis of Plaintiffs’ challenge is that, even when there is no other reason to suspect that the *189 Tribe’s payment for the services of a judge has created some sort of conflict, bias, or lack of fairness, it is sufficient to allege that the Tribe’s payment has created or may create such a conflict. But such a claim sweeps far too broadly and would take in every judicial officer that has been or that could be hired by this Tribe and its duly elected Council.[6] And the claim amounts to an attack on the Council’s chosen method for selecting and hiring judges, that is, by contract, rather than by election or appointment for some set or lifetime term. To that extent, Plaintiffs’ attack is aimed at this Tribe’s own decisions about how it will govern itself and how it will select and retain its judges. That decision is the Tribe’s and the Council’s, however; it is not a matter for this Court. In sum, the Rule of Necessity permits and compels this Court to hear this case.
In seeking to avoid that result, Plaintiffs emphasize (or at least the Petitioner in Pearsall emphasized) that the Chief Judge was considering and ruling on motions in that case during the same period when the Council was deciding whether to renew the Judge’s contract or not and was considering the Judge’s request for an increase in the hourly rate of pay. In Plaintiffs’ view, those facts somehow apply to this case and make it different from others where a claim of interest, bias or prejudice might be raised. It should be noted that the Council’s consideration of the Judge’s contract did not involve any face-to-face or protracted negotiation. Even the materials submitted by Petitioner in Pearsall along with his Motion show that the Tribal Attorney, not the Judge, presented the contract proposal to the appropriate Council subcommittee and that the Judge was not present. (Pearsall Motion, Ex 2 at 1-2). Plaintiffs (relying again on the Motion filed in Pearsall) attempt to derive some sinister significance from the fact that the Tribal Attorney apparently made the presentation, but instead that fact seems to suggest arms-length dealing between the Court and the Council. It also bears emphasis that, although the Chief Judge sought and obtained an increase in the hourly rate of pay, that increase may not result in any overall pay raise because the judge’s hours are apt to be fewer.
Moreover, in all events, the facts that Petitioner Pearsall stressed in his Motion—that the Chief Judge’s contract was up for renewal and that an hourly pay raise was before the Council when this case,was before the Court—do not meaningfully distinguish that case or this one from any other where a similar claim of interest, bias, prejudice, or a lack of impartiality might be raised. Petitioner Pearsall noted that other judges could be hired, even for a single ease, such as this one. But a judge hired on even that basis could face the accusation that the judge would be biased based on the hope that a result favorable to the Tribe or to one of its instrumentalities might lead to future single-case appointments and future pay. And any judge hired on a longer-term contract basis by the Council could face, at any time during the contract period, the claim that the judge would be likely to rule in the Tribe’s favor in order to secure another contract in the future or to ensure the assignment of work under the existing contract. Most cases that come before the Tribal Court involve the Tribe, the Council, or an instrumentality of the Tribe. Thus, the inevitable, but illogical, result of accepting the premise of Plaintiffs’ Motion *190 here would be to shut down Tribal Court and to make it impossible for any judge hired by the Council to hear any case. That result, in turn, would force the Tribe and the Council to change the way judges are hired and retained, compelling a switch from the current contract system to some other method.[7] If such a change, or any other change, is to be made, however, that is the business of the Council, not of this Court.
C. CONCLUSION
In sum, although at least Petitioner Pearsall made an attempt to limit the focus of his disqualification motion, in fact it swept far too broadly and proved too much. And the Motion advanced in this case sweeps even more broadly, to encompass apparently every case before the Court, and would prove the end of the Tribe’s and the Council’s chosen method of selecting and retaining the Tribe’s judges. If the premise of Plaintiffs’ motion were accepted, then this Court could not function, and the Court cannot and will not accept that result.
Therefore, for the reasons given above, Plaintiffs’ Motion for Recusal or Disqualification of Judge is denied.

. The Court already has denied a similar motion filed in the case of Pearsall v. Tribal Council (case no. C-02-10-007).

.It is not necessarily clear what Plaintiffs’ precise claims are here. Plaintiffs “incorporate by reference” the motion tiled in the Pearsall case, but the posture of that case, and thus the precise claims raised, were rather different—or at least one would think they should be. The awkwardness of Plaintiffs' attempt simply to rely on the motion filed in Pearsall is evident from the fact that the Motion filed here cites the judge's supposed “bias and prejudice in favor of the Tribal Council," which is not a party to this case.

. Plaintiffs' complaint was filed in December 2001.

. Plaintiffs also refer to "[tjhe recent attempted repeal of the Tribal Ethics Code and attempted retroactive exclusion of Tribal Judges,” which, Plaintiffs assert, “presents *187 questions which (they] cannot answer at this time as to how Tribal Council acted without prior reasonable notice and purportedly adopted the repeal with votes by clearly conflicted Tribal Councilors.” (Reply memo 2). Those questions are not before the Court in this case and, because Plaintiffs suggest no answer to them, neither will the Court.
Plaintiffs contend that the fact that one of them filed an ethics complaint against the judge automatically entitles them to another judge. Plaintiffs are incorrect. Allowing a litigant to so easily get rid of a judge would only encourage "judge shopping" and make the Court subject to the whim and mood of any litigant. See United States v. Pryor, 960 F.2d 1, 3 (1st Cir.1992) (“It cannot be that an automatic recusal can be obtained by the simple act of suing the judge”).

. As noted, plaintiffs rely on and ask the Court to refer to the recusal Motion filed in Pearsall. The cases are so different, however, that it is difficult simply to transfer the Mo-lion from one case to another. The Court rejected the Petitioner's claims of bias in Pear-sall. Those claims make considerably less sense here, where the Tribe and the Tribal Council are not parties. As Defendants suggest, am nexus between Plaintiffs' claims of bias and this case is elusive. And Plaintiffs are not entitled to a different judge simply because the Court rejected the recusal Motion in Pearsall. Parties before a Court are entitled to a fair and impartial judge, but the prospect of losing a Motion may well say more about its merits than any personal bias or prejudice on the part of the judge. See Toth v. Trans World Airlines, Inc., 862 F.2d 1381, 1388 (9th Cir.1988) ("a motion for re-cusal that does not point to an extrajudicial source of bias is legally insufficient”). Despite the awkwardness of applying the Pear-sall claims directly to this case, because Plaintiffs make little effort to distinguish the cases or to advance a more case-specific argument, the Court will follow suit and rely heavily on its decision in Pearsall.

. And, because neither the Tribe nor the Tribal Council is a party to this case, the claim apparently would apply to any case before the Court no matter what the claims or who the parties might be.

. Indeed, it can be doubted whether even any such change would suffice. Any judge working for the Tribe, whether elected, hired as an employee, or appointed to some term, would be paid by the Tribe and thus would be subject to claims of bias similar to those raised by Plaintiffs here.